UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                               Case No. 19-46824

MARK M. BELLO,                                       Chapter 13

        Debtor.                                  Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE DEBTOR'S ELIGIBILITY
TO BE A DEBTOR IN CHAPTER 13**

**I. Introduction**

    This case came before the Court for hearings on September 12, 2019 and October 24, 2019, regarding confirmation of the Debtor's proposed Chapter 13 Plan (Docket # 13, the "Debtor's Plan"). The Chapter 13 Trustee's objections to confirmation have been resolved by agreement, but there are unresolved objections to confirmation by creditors Judith Michaelian, individually and in her capacity as personal representative of the Estate of Marshall S. Michaelian (collectively, the "Michaelian Parties").

    One of the objections to confirmation by the Michaelian Parties is their argument that the Debtor, Mark M. Bello, is not eligible to be a debtor in Chapter 13, because as of the date he filed his bankruptcy petition, Bello's "noncontingent, liquidated, unsecured debts" exceeded $419,275.00, the current statutory maximum for a Chapter 13 debtor under 11 U.S.C. § 109(e).[1]

    The Court has considered the briefs, exhibits, and written and oral arguments of the parties concerning this issue. For the reasons stated in this Opinion, the Court finds and concludes that the Debtor's "noncontingent, liquidated, unsecured debts" as of the petition date

---

[1] The parties agree that the inflation-adjusted statutory maximum in § 109(e) became $419,275.00 effective April 1, 2019, just over a month before the Debtor filed his bankruptcy petition in this case on May 3, 2019. The parties correctly agree that this is the amount that applies in this case.

totaled at least $470,880.35. The Debtor therefore is ineligible to be a debtor in Chapter 13. Instead, he must pursue bankruptcy relief, if at all, under either Chapter 11 or Chapter 7 of the Bankruptcy Code.

## II. Jurisdiction

This Court has subject matter jurisdiction over this case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This matter also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009) (citations omitted). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," including Bankruptcy Code §§ 109(e) and 1325. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases."

## III. Discussion

### A. The Debtor's ineligibility to be a Chapter 13 debtor under 11 U.S.C. § 109(e)

#### 1. Section 109(e)

Bankruptcy Code § 109(e) limits who is eligible to be a debtor in Chapter 13. In relevant part, it states:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than [$419,275] . . . may be a debtor under chapter 13

of this title.

11 U.S.C. § 109(e). The issue in this case is whether the Debtor owed, on the date of his bankruptcy petition, "noncontingent, liquidated, unsecured debts" totaling $419,275 or more. If he did, then he is ineligible to be a Chapter 13 debtor.

**2. Case law regarding the § 109(e) debt limitation**

The Court reiterates the following points about § 109(e), which the Court stated in its opinion in the case of *In re Kwiatkowski*, 486 B.R. 409 (Bankr. E.D. Mich. 2013):

> In determining whether a Chapter 13 debtor's debts exceeds the § 109(e) debt limitations, the focus is on the amount of the secured and unsecured debts as of the petition date. With respect to the nature and amount of the Debtor's secured and unsecured debts, the Court must look first to the Debtor's schedules. As the United States Court of Appeals for the Sixth Circuit has held, "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *Comprehensive Accounting Corp. v. Pearson* (*In re Pearson*), 773 F.2d 751, 757 (6th Cir. 1985); *see also Scovis v. Henrichsen* (*In re Scovis*), 249 F.3d 975, 982 (9th Cir. 2001)(same).
>
> The § 109(e) debt limits apply only to debts that are "liquidated" and "noncontingent" as of the petition date. In *In re Redburn*, 193 B.R. 249, 259 (Bankr. W.D. Mich. 1996), the court discussed the meaning of "noncontingent" under 11 U.S.C. § 109(e):
>
>> Neither the Bankruptcy Code, nor the legislative history provide a definition for the term "contingent" or the negative form "noncontingent" which appears in § 109(e). However, it is well-settled that "a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." Conversely, a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event *which will trigger*

3

> *the liability of the debtor to the alleged creditor.*"
>
>> *Id.* (italics in original)(citations omitted); *see also In re Tabor*, 232 B.R. 85, 89 (Bankr. N.D. Ohio 1999)("[I]t is well settled that a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition.")(internal quotation marks and citations omitted).
>>
>> Noting that the term "liquidated" is not defined by the Bankruptcy Code, the Sixth Circuit has held that a debt is "liquidated" if it "'can be determined by mathematical computation.'" *See Pearson*, 773 F.2d at 754 (citations omitted). In the *Pearson* case, the Sixth Circuit observed that the "courts are in disagreement as to whether the debt is unliquidated when there is a substantial dispute regarding liability or amount." *Id.* After discussing the conflicting cases, the *Pearson* court did not take a position on this issue. *See id.* at 754-55. But if a debt is unliquidated on the date of the petition, it does not count toward the § 109(e) debt limits, even if events after the petition date convert the debt into a liquidated debt. *See id.* at 758. Rather, the bankruptcy court should "look realistically to the state of the debtors' affairs as it reasonably appeared on the date of filing." *Id.*
>
> 486 B.R. at 414-15 (italics in original).

### 3. The relevant debts in this case

The Court finds that as of the May 3, 2019 petition date in this case, the Debtor had "noncontingent, liquidated, unsecured debts" in the following amounts, as shown by the Debtor's schedules plus the undisputed facts:

1. $77,341.00, equal to the unsecured portion of three secured debts listed in the Debtor's Schedule D; plus

2. $82,789.35, equal to the total of the unsecured debts listed in the Debtor's Schedule E/F; plus

3. An unsecured debt owing to the Michaelian Parties that was liquidated in the amount

4

of at least $310,750.00.

These amounts total at least $470,880.35, well over the $419,275.00 statutory limit.

Of these debts, the Debtor admits that the amounts listed in item nos. 1 and 2 count toward the §109(e) limit, as noncontingent, liquidated, unsecured debts.[2] Except for the debt to the Michaelian Parties, the Debtor did not list any of the unsecured debts reflected in his Schedules D or E/F as "[c]ontingent," "[u]nliquidated," or "[d]isputed."[3]

The debt listed in item no. 3 above was not listed in any specific amount in the Debtor's schedules. Rather, the Debtor's Schedule E/F listed only a debt to the Michaelian Parties in an "Unknown" amount, and listed that debt as "[c]ontingent," "[u]nliquidated," and "[d]isputed."[4]

The Court further finds as follows, regarding the Debtor's debt to the Michaelian Parties:

This unsecured debt is the Debtor's personal liability to the Michaelian Parties, jointly with Lawsuit Financial, Inc., on claims filed by the Michaelian Parties in an action pending in the United States District Court for the Eastern District of Michigan, titled *Judith Michaelian and Estate of Marshall S. Michaelian v. Lawsuit Financial, Inc. and Mark M. Bello*, Case No. 2:17-cv-13321-TGB-MKM (the "District Court Case"). In the District Court Case, in an order filed on March 20, 2019 at Docket # 73 (the "District Court Decision"), the district court granted summary judgment as to liability on Count X of the Amended Complaint of the Michaelian

---

[2] *See* the Debtor's brief, entitled "Corrected Memorandum of Law in Support of Good Faith and Eligibility" (Docket # 68) at 5.

[3] *See* Schedules D and E/F (Docket # 10).

[4] Schedule E/F (Docket # 10) at pdf p. 22.

5

19-46824-tjt    Doc 83    Filed 12/13/19    Entered 12/13/19 15:55:32    Page 5 of 13

Parties.[5]  That Count alleged that the Debtor, Mark Bello, and Lawsuit Financial, Inc. violated Sections 5(a) and 5(c) of the federal Securities Act of 1933 (the "Act"), 15 U.S.C. § 77e(a) and (c).[6]  As the district court noted, those statutory provisions "prohibit using interstate commerce to sell and deliver unregistered securities[,]" and Section 12(a)(1) of the Act "confers liability for losses upon a person who violates" these provisions, citing 15 U.S.C. § 77l.[7]

In granting summary judgment as to liability on this Count X, the district court stated that "Defendants' only defense to Count X is that the transaction [at issue] between Dr. Michaelian and Bello was a loan, not the sale of a security."[8]  And the district court rejected that defense, as a matter of law.[9]

The district court's summary judgment decision means that both the Debtor, Mark Bello, and Lawsuit Financial, Inc., jointly, are liable to the Michaelian Parties on Count X.[10]

In granting such partial summary judgment, the district court left unresolved, for later determination, the amount of damages for which the Debtor and Lawsuit Financial, Inc. are liable on Count X.  And the district court has not yet decided the amount of damages.  But in

---

[5]  That Amended Complaint is on file at Docket # 63 in the District Court Case.  Count X of that Amended Complaint clearly is directed against both the Debtor, Mark Bello, and Lawsuit Financial, Inc.  And the Debtor does not contend otherwise.

[6]  *See* Amended Complaint (Docket # 63 in the District Court Case) at 42-43.

[7]  District Court Decision (Docket # 73 in the District Court Case) at 44.

[8]  *Id.*

[9]  *See id.* at 44-49.

[10]  In the District Court Decision, the district court also granted summary judgment, as to liability, in favor of the Michaelian Parties on Count II of their Amended Complaint.  But that count in the Amended Complaint clearly was asserted only against Lawsuit Financial, Inc., and not against the Debtor Mark Bello.

6

supplemental briefing about damages, filed in the District Court Case on April 24, 2019, the Debtor presented his computation of the damages in detail. In doing so, the Debtor twice argued, and thereby admitted, that the appropriate amount of damages on Count X (assuming liability, which the district court had found) is $310,750.00.[11] The Debtor made this admission in the district court only 9 days before filing his Chapter 13 petition on May 3, 2019.

The Michaelian Parties contend, in both the District Court Case and in this case, that the amount of the Debtor's debt to them on Count X is much higher than $310,750.00. And they contend that the Debtor's debt to them on other Counts of the Amended Complaint is much higher than $310,750.00. But this Court does not need to decide those damage issues, which in any event are for the district court to decide. It is enough for this Court, in ruling on the § 109(e) eligibility issue, that the Debtor's debt on Count X is at least $310,750.00, because that amount puts the Debtor's relevant unsecured debt well above the § 109(e) limit.

The Debtor has argued in this Court that his debt should be deemed reduced, for purposes of determining the amount of the Debtor's debt to the Michaelian Parties, in the amount of roughly $241,000 that Lawsuit Financial, Inc. has paid into the district court in connection with the District Court Case.[12] That money is being held by the district court, however — it has not

---

[11] The Debtor made this argument and admission in two documents filed in the District Court Case on April 24, 2019. This was in the motion entitled "Defendants' Motion for Leave to File Second Supplemental Brief on Damages as to Count X of the Amended Complaint" (District Court Case at Docket # 80) at pdf p. 2, and in the proposed Second Supplemental Brief attached to that motion (District Court Case at Docket # 80-1) at pdf p. 6. These April 24, 2019 filings were made only 9 days before the Debtor filed this bankruptcy case on May 3, 2019. The district court later granted the motion for leave referenced above, on June 28, 2019 (District Court Docket # 84), and the proposed Second Supplemental Brief was filed, without change, on July 7, 2019 (District Court Docket # 85).

[12] *See* the Debtor's brief, entitled "Corrected Memorandum of Law in Support of Good Faith and Eligibility" (Docket # 68) at 7.

7

been paid over to the Michaelian Parties. Unless and until it is actually paid to the Michaelian Parties, the Debtor's debt to the Michaelian Parties cannot be deemed paid down by any such funds.[13] The Debtor's debt on Count X of the Amended Complaint, therefore, still must be considered to be at least the $310,750.00 amount admitted to by the Debtor.

Based on the foregoing, the Debtor's debt to the Michaelian Parties, as of the May 3, 2019 bankruptcy petition date, must be considered to have been "liquidated" in the amount of at least $310,750.00. To that extent, the debt *amount* is admitted, and was computed by the Debtor himself, in his supplemental brief filed in the district court 9 days before the Debtor filed this bankruptcy case. To that extent, therefore the debt amount "can be determined by mathematical computation." *See Kwiatkowski*, 486 B.R. at 415 (citing *In re Pearson*, 773 F.2d 751, 754 (6th Cir. 1985)). To the extent the Michaelian Parties contend that the debt is higher than this amount that the Debtor has admitted, any such additional debt amount is unliquidated. But the liquidated portion of the debt counts in determining the Debtor's eligibility under § 109(e). *See, e.g.*, *Federal Deposit Ins. Corp. v. Wenberg* (*In re Wenberg*), 94 B.R. 631, 632-33 (B.A.P. 9th Cir. 1988), *aff'd.*, 902 F.2d 768 (9th Cir. 1990) (finding a Chapter 13 debtor ineligible under § 109(e) based on including the liquidated portion of a debt that was partially liquidated and partially unliquidated).[14]

---

[13] Nor has the Debtor argued that the payment of this money into the district court gave the Michaelian Parties any sort of security interest or lien to secure payment of the debt to them. To the contrary, the Debtor clearly listed the debt to the Michaelian Parties only as an *unsecured* debt, in his Schedule E/F (Docket # 10). And there is no basis in the record upon which this Court could conclude that there is any such lien or security interest.

[14] In *Wenberg*, before the Chapter 13 debtor filed his bankruptcy petition, the Federal Deposit Insurance Corporation (the "F.D.I.C.") had sued the debtor in an adversary proceeding in a different district (the "other court"), seeking monetary relief in the form of damages plus attorney fees and costs.

8

And the liquidated debt of $310,750.00 clearly was "noncontingent" as of the May 3, 2019 bankruptcy petition date. This is clear from the District Court Decision (District Court Docket # 73) finding the Debtor liable on Count X of the Amended Complaint. Unquestionably, "all events giving rise to liability" on this Count X "occurred prior to the filing of the bankruptcy petition." So the debt is noncontingent. *See Kwiatkowski*, 486 B.R. at 414-15 (citing *In re Redburn*, 193 B.R. 249, 259 (Bankr. W.D. Mich. 1996)).

Finally, it is clear that for purposes of § 109(e), this Court should disregard the Debtor's statements in his Schedule E/F that the amount of his debt to the Michaelian Parties was "Unknown" as of the petition date, and that the debt was contingent and entirely unliquidated.

In the *Pearson* case, quoted by this Court in the *Kwiatkowski* case, in Part III.A.2 of this Opinion, the Sixth Circuit held that "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *Kwiatkowski*, 486 B.R. at 414 (quoting *Pearson*, 773 F.2d at 757). But *Pearson* also held that "the bankruptcy court should 'look realistically to the state of the debtors' affairs as it reasonably appeared on the

---

94 B.R. at 632. Before the debtor filed his bankruptcy petition, the other court issued a declaratory judgment finding the debtor liable to the F.D.I.C. for damages and attorney fees and costs. As of the bankruptcy petition date, the other court had not yet determined the amount of such damages, attorney fees, or costs, but rather had scheduled a hearing to determine those amounts. But the day before that hearing was to be held, the debtor filed his Chapter 13 petition. *Id.* The bankruptcy court later determined that as of the bankruptcy petition date, the debtor's debt to the F.D.I.C. was liquidated, in part, for § 109(e) purposes, to the extent of $34,989 in damages (consisting of certain accounting fees) and to the extent of $18,967 in attorney fees. *Id.* at 633. These amounts were counted as part of the "liquidated" unsecured debt for § 109(e) purposes, even though they were only part of the total amount of debt claimed by the F.D.I.C. to be owing. Indeed, after the debtor filed his bankruptcy petition, the other court entered a judgment against the debtor in the total amount of "$1,282,700 plus costs and attorney fees" on the F.D.I.C. claims. *Id.* at 632. (That judgment was ignored by the bankruptcy court because it was entered in violation of the automatic stay). *Id.* at 632 n.1. On appeal, both the Bankruptcy Appellate Panel and the Ninth Circuit Court of Appeals affirmed the bankruptcy court's decision finding the debtor to be ineligible for Chapter 13 under § 109(e). *See* 902 F.2d 768 (9th Cir. 1990).

date of filing.'" *Kwiatkowski*, 486 B.R. at 415 (quoting *Pearson*, 773 F.2d at 758).

In this case, the Debtor's Schedule E/F was not made in good faith, to the extent it indicated that the debt to the Michaelian Parties was "contingent," and entirely "unliquidated." Nor was the amount of the debt entirely "[u]known" as stated in Schedule E/F. The debt clearly was not contingent, as discussed above, and there is no reasonable argument the Debtor could make, now or as of the petition date, that the debt was contingent. And as of the petition date, the Debtor reasonably should have known, and must have known, that his debt to the Michaelian Parties was liquidated at least as to the Debtor's liability on Count X of the Amended Complaint in the amount of $310,750.00. This is so because (1) on March 20, 2019, 44 days before the Debtor filed his bankruptcy petition on May 3, 2019, the district court had granted summary judgment, ruling that the Debtor was liable on Count X, with no genuine dispute of material fact and as a matter of law;[15] and (2) on April 24, 2019, only 9 days before filing his bankruptcy petition, the Debtor filed a brief in the District Court Case in which he computed the damages amount on Count X and admitted that the amount was $310,750.00.

Under these circumstances, the Court can and should look beyond what the Debtor stated in his Schedule E/F. As noted above, the Court must "look realistically to the state of the debtors' affairs as it reasonably appeared on the [petition] date." Doing that, the Court finds that as of the petition date, the Debtor had a noncontingent, liquidated, unsecured debt to the Michaelian Parties of at least $310,750.00. When that debt amount is added to the other amounts listed in Part III.A.3 of this Opinion, the total is $470,880.35, well above the

---

[15] *See* Fed. R. Civ. P. 56(a) (summary judgment to be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

§ 109(e) limit of $419,275.00.  The Debtor is not eligible to be debtor in Chapter 13.

**B.  The proper remedy for the Debor's Chapter 13 ineligibility**

The Court cannot confirm the Debtor's Chapter 13 Plan, and this case cannot continue under Chapter 13.  The case can now take one of only three possible routes — conversion to Chapter 11 under 11 U.S.C. § 1307(d); conversion to Chapter 7 under 11 U.S.C. § 1307(a) or § 1307(c); or dismissal under 11 U.S.C. § 1307(b) or § 1307(c).  The Michaelian Parties ask the Court to dismiss this case.  It is unclear what option the Debtor will want to take, now that Chapter 13 is not available, but the Debtor's attorney indicated at the October 24, 2019 hearing that the Debtor might wish to convert to Chapter 11.

Normally, having found the Debtor ineligible for Chapter 13, the Court would allow the Debtor to choose which alternative route to take.  But in the rather unusual circumstances of this case, the Court has found that the Debtor did not act in good faith in the way he listed his debt to the Michaelian Parties in his Schedule E/F.  And the Michaelian Parties have alleged that the Debtor did not act in good faith in filing this bankruptcy case, and that the Debtor has acted in bad faith and has been dishonest in additional ways, all of which, they say, justifies dismissal of this case.

In a similar situation in the *Kwiatkowski* case, this Court gave the debtors only a limited choice: conversion to Chapter 7, or dismissal with a one-year bar to filing a new bankruptcy case. The Court did so in that case as a sanction, after holding an evidentiary hearing and finding the debtors guilty of bad faith and dishonesty.  *See Kwiatkowski*, 486 B.R. at 420-22.

In this case, the Court has not held an evidentiary hearing to determine the validity of all of the creditor's charges of bad faith and dishonesty.  It may be necessary to do so in the future,

11

for example, if this case continues under Chapter 7 or 11. But the Court concludes that the bad faith the Court has identified in this Opinion, and the other bad faith and dishonesty that the Michaelian Parties have accused the Debtor of, are such that the Court, in its discretion, will not deprive the Debtor of the right to first choose, within 14 days, among the three options: conversion to Chapter 11; conversion to Chapter 7; or dismissal.

If the Debtor chooses dismissal, however, the Court will bar the Debtor from filing any new bankruptcy case for 180 days. This bar to refiling, if the Debtor chooses dismissal, will be necessary to prevent an abuse of process. *See* 11 U.S.C. § 105(a). If the Debtor could simply dismiss this case, then turn around and file a new bankruptcy case right away or in the near future, such a refiling would be an abuse, because it either would be an improper attempt to evade this Court's rulings today (if the Debtor refiled under either Chapter 13 or 11); or would serve no legitimate purpose (if the Debtor refiled under Chapter 7, having just spurned the opportunity to convert this case to Chapter 7). *Cf. Kwiatkowski*, 486 B.R. at 421 (ruling that the debtors would be barred from refiling for one year if they chose dismissal rather than conversion).

If the Debtor chooses conversion to another chapter, the Michaelian Parties may reassert their charges of bad faith and dishonesty in seeking appropriate relief in the new chapter, and the Debtor may defend against any such charges.

**IV. Conclusion**

For the reasons stated in this Opinion, the Court will enter an order denying confirmation of the Debtor's proposed Chapter 13 plan, and giving the Debtor 14 days to file a motion to dismiss this case; or, in the alternative, to file a motion to convert this case either to Chapter 7 or

Chapter 11. The Order will further provide that if the Debtor moves to dismiss this case, or if the Debtor fails to timely file a motion to convert this case, this case will be dismissed, with a 180-day bar to refiling.

**Signed on December 13, 2019**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**