UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 19-46824

MARK M. BELLO,  Chapter 11

        Debtor.  Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE DEBTOR'S MOTION FOR AN ORDER
FINDING THE MICHAELIAN PARTIES IN VIOLATION
OF THE AUTOMATIC STAY**

**I. Introduction**

This case came before the Court for a hearing on January 29, 2020, on the Debtor's motion entitled "Debtor's Motion for Order Finding Creditors Judith Michaelian and the Estate of Marshall S. Michaelian in Violation of the Automatic Stay," filed on December 9, 2019 (Docket # 78, the "Motion"). Counsel for the Debtor; counsel for the creditors, Judith Michaelian and the Estate of Marshall S. Michaelian (the "Michaelian Parties"); and counsel for the United States Trustee appeared at the hearing. During the hearing, the Court made certain rulings regarding the Motion, but did not fully decide the Motion. For the reasons stated by the Court on the record during the January 29, 2020 hearing, the Court entered an Order on January 30, 2020 (Docket # 112, the "January 30 Order"), which made certain findings and conclusions, allowed certain further briefing by the parties, and scheduled a bench opinion hearing on the Motion, which is currently scheduled for February 27, 2020 at 3:00 p.m.

The Court now has decided to rule on the Motion in writing, rather than by an oral bench opinion.

**II. Discussion**

The Court finds and concludes as follows.

A. This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

B. The Court reiterates and adopts the following findings and conclusions that it made in the January 30 Order:

> A. The co-debtor stay provided by 11 U.S.C. § 1301(a) does not apply, and has no relevance to the Motion.
>
> [and]
>
> B. This Court's stay-relief order filed on September 13, 2019 (Docket # 57) did not modify the automatic stay under 11 U.S.C. § 362(a) to permit the Michaelian Parties to file a motion, in the case pending in the United States District Court,[1] seeking the appointment of a receiver of the defendant Lawsuit Financial, Inc.[2]

C. The Court finds persuasive and agrees with the cases that have held that when a bankruptcy debtor owns a 100%, or the majority, interest in a corporation, it is a violation of the automatic stay for a creditor to file a motion seeking the appointment of a receiver of the corporation in a non-bankruptcy case. Those cases reason that the filing of such a motion is an "act . . . to exercise control over property of the estate" within the meaning of 11 U.S.C. § 362(a)(3). The Court agrees with the reasoning and holdings of the following cases:

> 1. *Qarni v. Vahora* (*In re Qarni*), Adv. No. 19-01090-A, 2019 WL 6817106, at *3-5 (Bankr. E.D. Cal. Dec. 11, 2019) (holding that

---

[1] The case of *Judith Michaelian and Estate of Marshall S. Michaelian v. Lawsuit Financial, Inc. and Mark M. Bello*, Case No. 2:17-cv-13321-TGB-MKM (United States District Court for the Eastern District of Michigan) (the "District Court Case").

[2] The Michaelian Parties filed such a motion in the District Court Case on December 4, 2019 (Docket # 88 in the District Court Case) (the "Receivership Motion"). That Receivership Motion is now pending in the district court.

under state law, a Chapter 13 debtor, who was the sole shareholder of a corporation, had a contractual right, based on the corporate bylaws, to control the activities of the corporation; that such right was a property right that became property of the estate upon the debtor's filing a Chapter 13 case; that such property right was protected by the automatic stay; and that therefore a creditor's filing of a lawsuit against the corporation seeking, in relevant part, the appointment of a receiver for the corporation, was an attempt to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3), because it would alter the debtor's right to control the activities of the corporation, and would result in the liquidation of the corporation and the loss of the debtor's and the joint debtor's employment and their "ability to fund their Chapter 13 plan").

2. *Edisto Res. Corp. v. McConkey* (*In re Edisto Res. Corp.*), 158 B.R. 954, 957-58 (Bankr. D. Del. 1993) (holding that a minority group of shareholders' filing of a lawsuit, which, in relevant part, sought the appointment of a receiver for a corporation in which the Chapter 11 debtor corporations were majority shareholders (Chapter 11 debtors owned approximately 80% of corporate common stock) was a violation of the automatic stay, because it was an attempt to exercise control over property of the estates of the Chapter 11 debtors).

3. *Sheehan v. Warner* (*In re Warner*), 480 B.R. 641, 647 (Bankr. N.D.W. Va. 2012) (holding that "the right to participate in a LLC—a non-economic right—is property of the estate under 11 U.S.C. § 541(a)" and that "because non-economic rights are property of the estate and fit under the canopy of § 362(a)(3)" the action taken by the other members of the LLC to dissociate the debtor, who held 2 of the 12 membership interests, was void).

D. The Debtor, on account of his 100% shareholder interest in Lawsuit Financial, Inc., has certain property rights under state law, including but not limited to, the right to govern and manage the activities of the corporation; the right to receive a salary; and the right to receive distributions from the corporation, which rights became property of the bankruptcy estate on May 3, 2019, when the Debtor filed a voluntary petition for relief under Chapter 13. *See Madugula v. Taub*, 853 N.W.2d 75, 93 (Mich. 2014) (footnotes omitted) (quoting Mich. Comp. Laws § 450.1109(2)) (explaining that "[u]nder the [Michigan Business Corporation Act] a shareholder

3

is 'a person that holds units of proprietary interest in a corporation . . . .'" and that "through this [shareholder] interest . . ., a shareholder retains certain statutory rights that allow the shareholder to protect and gain from his or her interest as a shareholder, including, but not limited to, the right to vote, inspect the books and receive distributions"); *cf. In re Mondanlo*, 412 B.R. 715 (Bankr. D. Md. 2006) (holding that a Chapter 11 trustee of a limited liability company's sole member had the right to exercise the management and governance rights that such sole member had on account of his membership interest).

E. The filing of a motion for the appointment of a receiver of Lawsuit Financial, Inc. ("LFC") (the "Receivership Motion") by the "Michaelian Parties," in the case of *Judith Michaelian and Estate of Marshall S. Michaelian v. Lawsuit Financial, Inc. and Mark M. Bello*, Case No. 2:17-cv-13321-TGB-MKM (the "District Court Case"), was a violation of the automatic stay under 11 U.S.C. § 362(a)(3). The filing and prosecution of such motion was an attempt to exercise control over, to interfere with, and to alter, property rights the Debtor has on account of his 100% shareholder interest in LFC, which property rights became property of the Debtor's bankruptcy case on the petition date under 11 U.S.C. § 541(a)(1).

F. The Court rejects the argument by the Michaelian Parties that in filing the Receivership Motion "there [was] no attempt by the Michaelian Parties to liquidate [the] Debtor's interest in [LFC] or interfere with his employment with the company such that he would be unable to fund any approved Chapter 11 plan." (*See* "Supplemental Brief in Opposition to Debtor's Motion for Order Finding Creditors Judith Michaelian and the Estate of Marshall S. Michaelian in Violation of the Automatic Stay" (Docket # 114) at pdf pages 2-3.) The papers filed in the district court contradict this assertion.

4

Paragraph 4 of the Receivership Motion states that "[a]s set forth more fully in [the Michaelian Parties'] Brief in Support of [the Receivership] Motion, Defendant . . . LFC['s] . . . precarious financial position will continue to deteriorate if a receiver is not appointed." In the Brief is Support of the Receivership Motion, the Michaelian Parties allege that LFC's precarious financial position is the result of the Debtor's mismanagement and control of LFC and the salary and distributions that the Debtor has used for personal and family expenses. It is clear that the intent of the Michaelian Parties in seeking the appointment of a receiver is to have the receiver take over the control and management of LFC; place all of the assets of LLC out of the reach and control of the Debtor; prevent the Debtor from paying himself a salary and making any distributions to himself to cover personal and family expenses out of the assets of LFC, and either make payments to the Michaelian Parties or escrow any monies received for the benefit of the Michaelian Parties. The Brief in Support of the Receivership Motion states, in relevant part:

> It is now therefore imperative that this Court act to secure what assets remain in the business and prevent [the Debtor] from further exhausting the assets of the business.
>
> . . . .
>
> [B]usiness revenues, as well as funds given to LFC by [the Michaelian Parties] and possibly others, are diverted to pay not only business, but personal expenses of LFC's sole owner and his family, as well as to retire business debts. A receiver is necessary to both unwind these improper transactions but to prevent further misuse of [Michaelian Parties'] funds.
>
> . . . .
>
> A receiver is necessary to protect the [Michaelian Parties'] well-established interest in LFC's assets and business revenues. A receiver should "take control of [LFC's] businesses, complete projects, collect revenue[,] pay creditors, and then allow the parties

> to continue or separately wind up their affairs. As may be
> appropriate." A receiver would be able to collect revenues from
> cases as they settle and allocate those payments to payment of
> LFC's debts. This would not harm the business of LFC in any
> way; rather, it would help stabilize LFC and prevent its owner from
> depleting funds for his personal expenditures. . . .
>
> . . . .
>
> If [the Debtor] is allowed to continue to manage LFC and its assets
> in the self-serving, reckless, and un[sus]tainable manner he has
> been, anything which remains of [the Michaelian Parties'] assets
> will be wasted, squandered, or lost.

(Br. in Supp. of Receivership Mot. in the District Court Case at 2, 16, 18, 20 (citations omitted)); *see also* Reply Br. of the Michaelian Parties in Supp. of the Receivership Mot. at 1 ("It is now manifestly clear that the only appropriate course of action is to appoint a receiver for Defendant LFC and remove it from the [the Debtor's] control and abusive practices.").

G. The Court rejects the attempts by the Michaelian Parties to distinguish the facts of the cases cited in paragraph II.C of this Opinion from the facts of this case. The distinctions cited do not in any way require or permit a holding that the automatic stay was not violated by the filing of the Receivership Motion. For example, the Michaelian Parties attempt to distinguish the facts in this case from the facts in *Quarni* by stating that in *Quarni*, the appointment of a receiver was sought for the purpose of liquidating the corporation and "that such an action would result in [debtor and co-debtor's loss] of employment, and consequent inability to fund their chapter 13 plan," whereas in this case,

> the Michaelian Parties do not seek in their appointment of a
> receiver the ability to liquidate LFC, such that Debtor's ability to
> fund the plan, which ostensibly relies on his ability to continue to
> be paid a salary through LFC would be negatively impacted. Rather
> as described above, the Michaelian Parties are simply seeking to

6

> prevent [the] Debtor's unfettered abuse of LFC as a conduit for
> unsupervised payments to himself, insiders, and other, preferred
> creditors and preserve the status quo.

("Supplemental Brief in Opposition to Debtor's Motion for Order Finding Creditors Judith Michaelian and the Estate of Marshall S. Michaelian in Violation of the Automatic Stay" (Docket # 114) at 10-11.)

First, neither the Receivership Motion nor the Brief in Support of that motion, can fairly be construed as limiting the receiver's power in any way. Rather, it appears that the Receivership Motion seeks the appointment of a receiver with broad powers over both the assets of LFC and its business operations, and specifically states that it seeks to prevent payments to the Debtor and his family. Such payments could be critical to the Debtor's ability to fund a Chapter 11 Plan. The Brief in Support of the Receivership Motion also explicitly lists, as a possibility, the winding up of the affairs of the business.

Second, the Michaelian Parties failed to submit a proposed order with their Receivership Motion stating the specific relief that they are seeking, or stating any limitations on the power of the receiver they seek.

Third, the *Quarni* court did not limit the applicability of its holding to cases where the appointment of a receiver was sought for the purpose of liquidating a corporation in which a debtor in bankruptcy held 100% of the interests. The *Quarni* court employed a 3-part test to determine "whether a creditor's actions rise to the level of exercising control over property of the estate, 11 U.S.C. § 362(a)(3)[.]" *Qarni*, 2019 WL 6817106, at *3. The court stated:

> The Ninth Circuit, in *In re Bialac*, 712 F.2d 426 (9th Cir.1983),
> applied a three part test to determine whether a creditor violated
> § 362(a)(3). First, the court examined whether the debtor had a

7

> property right at state law. Second, the court asked whether that right was property of the estate. Third, the court determined "if the property was altered in a manner contrary to the relevant provisions of 11 U.S.C. § 362(a)...." *Id.* at 429–430 (9th Cir.1983). *See also In re Bibo, Inc.*, 200 B.R. 348, 351 (9th Cir. BAP 1996)[, *opinion vacated, appeal dismissed as moot*, 139 F.3d 659, 1998 WL 211735 (9th Cir. 1998)].

*Id.* This Court finds that all 3 prongs of the test in *Qarni* are met in this case. The Court finds that on account of his 100% shareholder interest in LFC, the Debtor has, under Michigan law, the property rights to manage and control LFC, to be paid a salary and to take distributions; that such rights became property of the estate upon his filing of his bankruptcy petition; and that appointment of a receiver was for the purpose of altering each of these property rights. Contrary to the arguments of the Michaelian Parties, *Qarni* is on point and supports a finding that the Michaelian Parties' violated 11 U.S.C. § 362(a)(3) in seeking the appointment of a receiver in the District Court Case. The Court finds the Michaelian Parties' attempts to distinguish *Edisto* and *Sheehan* equally unavailing. The differences in the fact patterns are immaterial, the cases are on point, and the cases support the Court's conclusion that the Michaelian Parties violated 11 U.S.C. § 362(a)(3).

H. If and to the extent the reasoning and holding in *Allentown Ambassadors, Inc. v. Northeast Am. Baseball, LLC (In re Allentown Ambassadors, Inc.)*, 361 B.R. 422 (E.D. Pa. 2007), cited by the Michaelian Parties, can be viewed as inconsistent with the holding of the Court in this case, the Court respectfully disagrees with that case.

I. In seeking the appointment of a receiver in the District Court Case, the Michaelian Parties "willfully" violated the automatic stay, within the meaning of 11 U.S.C. § 362(k)(1). This provision provides: "Except as provided in paragraph (2), an individual injured by any

8

willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

> A violation of the automatic stay is willful "if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *In re Printup*, 264 B.R. 169, 173 (Bankr.E.D.Tenn.2001) (internal quotation marks and citation omitted). The test for a willful violation of the automatic stay can be summarized in this way:
>
>> A specific intent to violate the stay is not required, or even an awareness by the creditor that [its] conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.
>
> *In re Daniels*, 206 B.R. 444, 445 (Bankr.E.D.Mich.1997) (internal quotation marks and citation omitted); *see also In re Webb*, 472 B.R. 665, 2012 WL 2329051 at *15 (6th Cir. BAP 2012) (unpublished opinion).

*Bankers Healthcare Grp., Inc. v. Bilfield* (*In re Bilfield*), 494 B.R. 292, 301 (Bankr. N.D. Ohio 2013). The Michaelian Parties willfully violated the stay because they knew about the bankruptcy case, having actively participated in it, and they deliberately filed the Receivership Motion. It does not matter whether the Michaelian Parties knew that filing the Receivership Motion was a violation of the automatic stay.[3] The Debtor therefore is entitled to actual

---

[3] In their brief in opposition to the Motion, filed on December 23, 2019 (Docket # 87), at page 9, the Michaelian Parties acknowledge that:

> A willful [stay] violation occurs when . . . the creditor knew of the stay and violated the stay by an intentional act; where the creditor could have sought permission from the [b]ankruptcy court prior to taking such

damages, which consist of the reasonable attorney fees and expenses that the Debtor incurred is contesting the Receivership Motion in the District Court Case and in prosecuting the Motion in this Court.

J. Under the facts of this case it is not appropriate to award the Debtor punitive damages against the Michaelian Parties.

> Punitive damages for a willful stay violation are awarded in response to "particularly egregious conduct for both punitive and deterrent purposes. . . . To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.'" *In re Timbs*, 178 B.R. 989, 998 (Bankr.E.D.Tenn.1994) (citations omitted).

*In re Storozhenko*, 459 B.R. 697, 707 (Bankr. E.D. Mich. 2011). Under the circumstances of this case the Court cannot find that the Michaelian Parties' conduct in violating the automatic stay was egregious. Nor can the Court find that the Michaelian Parties or their attorneys actually knew that they were violating the automatic stay or acted with reckless disregard of whether they were doing so. In the Court's discretion, therefore, the Court declines to award any punitive damages for the Michaelian Parties' willful stay violation.

### III. Conclusion

For the reasons stated in this Opinion, the Court will enter an order granting the Debtor's Motion to the extent of the relief described in this Opinion, and otherwise denying the Motion.

---

> action and did not. *In re Sharon*, 234 B.R. 676 (6th Cir. B.A.P. 1999) (additional citations omitted).

**Signed on February 13, 2020**      /s/ Thomas J. Tucker
                                                         **Thomas J. Tucker**
                                                         **United States Bankruptcy Judge**